**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-120**

**Filing Date:  August 28, 2009**

**Docket No.  27,650**

**LIZETTA A. THOMPSON,**

        **Petitioner-Appellant,**

**v.**

**RICHARD B. DEHNE,**

        **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Angela J. Jewell, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Jocelyn Drennan
Albuquerque, NM

for Appellant

Michael Danoff & Associates, P.C.
Michael L. Danoff
Albuquerque, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

{1}     In this case, Respondent Richard Dehne (Father) has obligations to pay child support for three children he has fathered with different mothers.  Only one support order is a part of this case, but we hold that the district court erred when it did not first follow the support guidelines in its award of child support for Tony (Child), owed by Father to Petitioner Lizetta Thompson (Mother).  Child is Father's second child.  Mother also appeals the district court's imposition of a monetary sanction for her failure to appear at a hearing.  Reversing the district court, we remand for recalculation of child support under the applicable

1

guidelines and affirm imposition of the sanction.

**BACKGROUND AND FACTS**

**{2}** Child, born on June 15, 1990, is the second oldest of three children for whom Father has been required to pay child support. Each child has a different mother. Father's other two children, Adam and Ryan, were born in November 1983 and July 1991 respectively. Support orders for Adam and Ryan had already been entered at the time Mother filed her petition for support of Child. Support proceedings for Adam took place in the Twelfth Judicial District Court and for Ryan in the Second Judicial District Court.

**{3}** In an amended petition filed on April 8, 1998, Mother requested child support beginning in March 1997 and ongoing, and for payment for certain periods between Child's birth in June 1990 and February 1997, during which she had not received state assistance. The district court initially ordered Father to pay Mother interim support of $130 per month for Child. The court also ordered Father to attempt to consolidate his other two children's cases to determine an equitable amount of support for each child. On February 10, 1999, the district court increased support for Child to $205 per month. In a report filed December 30, 1999, Special Master James Loughren found after a partial hearing that as a result of three separate lawsuits, Father was paying $400 per month for Adam, $434 per month for Ryan, and $205 for Child. Based on Father's 1999 monthly net earnings of $2271 and a statute providing that no more than fifty percent of an obligor's income may be withheld, the special master concluded that $301.50 per month was available for Child's monthly support payments. *See* NMSA 1978, § 40-4A-6(B) (1985). The special master recommended, and the district court ordered, that Father pay $300 per month as interim support for Child. The hearing was concluded in February 2000, after which the special master recommended that Father continue to pay $300 per month for Child's support and that this amount be reviewed when Father's obligation for support for Adam, the oldest, ended in 2001 or 2002. This recommendation also addressed the time between Child's birth and February 2000, and calculated the arrearage due from Father for this period and the amount of credit the special master believed Father was due against this arrearage for payments he had made.

**{4}** Mother objected to the special master's report issued on February 21, 2001, which calculated the arrearage she was due from Father. A different special master, Nan Nash, held a hearing in May 2002, after which she found that Special Master Loughren had conducted "thorough and comprehensive" hearings and had made "thoughtful and specific findings" that had become a court order and should not be overturned. Special Master Nash also noted that Adam was due to be emancipated soon, after which modification of support for Child should be reviewed. Mother appealed the district court orders resulting from the February 2001 and May 2002 special masters' reports. Because the district court had set a hearing on remaining issues concerning modification of support and arrearages, this Court dismissed the appeal on February 25, 2003 for lack of a final order.

**{5}** On July 15, 2003, Mother moved to resolve the remaining issues concerning past and

2

current child support calculations. After a hearing, Special Master Kaydee Culbertson filed a report on January 21, 2004, modifying ongoing support for Child to $453 per month, retroactive to June 2002, calculating Father's arrearage but declining to review Special Master Loughren's calculation of arrearages from 1990 through 1999. Special Master Culbertson filed another report on June 7, 2004, again noting Mother's objection to the calculation of arrearages. The district court adopted the report, and Mother again filed objections. After several continuances, a hearing was set for September 9, 2005. Mother did not appear on that date, and attorney fees of $350 were assessed against her. On March 7, 2007, the district court entered an order restating its adoption of the special masters' reports and stating that the order was final for purposes of appeal.

**{6}** Mother raises three issues on appeal: (1) whether Special Master Loughren's determination that $300 per month was an appropriate amount of support was an abuse of discretion; (2) whether, in calculating Father's child support arrearage, Special Master Loughren used an incorrect methodology with respect to the period in which Mother had received public assistance; and (3) whether the district court abused its discretion in sanctioning Mother for failing to appear at a hearing.

## TIMELINESS OF APPEAL

**{7}** Father argues that Mother's appeal was untimely. We disagree. Father asserts that Judge Angela Jewell's order, filed on July 9, 2004, was a final appealable order and that Mother's right to appeal expired thirty days thereafter under Rule 12-201(A)(2) NMRA. The July 9, 2004 order adopted the special master's report filed on June 7, 2004, and left open issues concerning attorney fees. Although certain proceedings concerning attorney fees occurred, the issue remained pending beyond March 7, 2007, when on Mother's motion, the district court issued an order that it declared to be final for purposes of appeal, except as to the attorney fee issue. This is the order on appeal before us. Regardless of whether the order of July 9, 2004 may have sufficiently disposed of the substantive issues in the case so as to be a final appealable order, because the attorney fee issue remained open, Mother had the choice of appealing at that time or within thirty days after the attorney fee issue was decided. *See Trujillo v. Hilton of Santa Fe*, 115 N.M. 397, 397, 851 P.2d 1064, 1064 (1993). Further, the district court appears to have believed it had ongoing jurisdiction in the matter between July 9, 2004 and March 7, 2007, as it scheduled several matters and entertained several motions during that period in addition to issuing the final order. Accordingly, we conclude that the appeal was timely filed.

## STANDARD OF REVIEW

**{8}** "The setting of child support is left to the sound discretion of the trial court as long as that discretion is exercised in accordance with the child support guidelines." *Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203 (filed 2001). "In any action to establish or modify child support, the child support guidelines . . . shall be applied to determine the child support due and shall be a rebuttable presumption for the amount of such

3

child support." NMSA 1978, § 40-4-11.1(A) (2008). "We also review the trial court's findings of fact to determine if there is substantial evidence to support the determinations." *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16 (filed 1998). "Finally, we review questions of law de novo." *Id.*

**SPECIAL MASTER'S CALCULATION OF SUPPORT FOR CHILD**

**{9}** On December 30, 1999, Special Master Loughren filed a report recommending that support for Child be set at $300 per month. Mother argues that this was not based on the child support guidelines or a justifiable deviation from the guidelines and was an abuse of discretion. Specifically, Mother asserts that the amount of $300 per month was based on the amount of Father's income that the special master believed remained after payment of larger amounts for Father's other two children.

**{10}** In his report, the special master observed that the amounts of child support Father was then paying for both Adam ($400 per month) and Ryan ($434 per month) reasonably approximated the guideline amounts and that the $205 per month amount that had previously been set for Child as temporary support was low as compared to Adam and Ryan. Noting that the hearing was not yet complete and that final resolution of certain issues regarding the parties' incomes remained to be determined, the special master based his recommendation of December 30, 1999 on Father's current average net earnings and the garnishment statute, which provides that the maximum amount which may be taken from wages for the enforcement of child support is fifty percent of disposable earnings. *See* NMSA 1978, § 35-12-7(C) (1979). Subtracting Adam's and Ryan's combined support of $834 per month from fifty percent of Father's net earnings of $2271 per month, the special master concluded that $301.50 remained, and that $300 per month was an appropriate amount for Child.

**{11}** The conclusion of the November 16, 1999, hearing on support for Child took place on February 2, 2000. The report that resulted from this hearing was filed approximately one year later on February 21, 2001. The special master found that the conclusion of the hearing "produced no additional information," and that "Father's income is as previously determined and imputation of a different income to Father is not appropriate." He also concluded that it would be reasonable to increase child support if Father had the ability to pay, but Father did not have this ability, and that adjustment of support for Child could only be done by adjusting Adam's and Ryan's support. The special master concluded that "[s]uch an adjustment [was] not possible in Adam's case and not appropriate in Ryan's case." Accordingly, the special master recommended that Child's current level of support continue at $300 per month until Father's responsibility for support for Adam ceased.

**{12}** It does not appear to us that Special Master Loughren based his recommendations on the child support guidelines, but rather tailored his amount to what was left over after other support obligations were satisfied from other court orders. It was wrong to proceed in this fashion, working backward from what was left after the previous orders and taking into account the garnishment statute, rather than working forward from Father's income and

4

applying the guidelines. We agree with Mother that the guidelines are the starting point for determining child support. "In an effort to promote fairness and reduce litigation with respect to child support, the New Mexico [L]egislature has enacted child support guidelines that set forth the amount to be paid on the basis of objective criteria. These guidelines greatly reduce the discretion of the court." *Rosen v. Lantis*, 1997-NMCA-033, ¶ 7, 123 N.M. 231, 938 P.2d 729. "Under NMSA 1978, Section 40-4-11.2 (1989), any deviation from the guidelines shall be supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate." *See Grant v. Cumiford*, 2005-NMCA-058, ¶ 25, 137 N.M. 485, 112 P.3d 1142 (internal quotation marks omitted). Application of the guidelines to the present factual setting admittedly presents several challenges.

**Support for First Child Should Have Been Deducted From Father's Income Under the Guidelines**

**{13}** Because Child has lived with Mother, and Father has apparently had visitation less than thirty-five percent of the time, the circumstances meet the definition of "basic visitation," and Worksheet A of the guidelines thus applies. Section 40-4-11.1(D)(2). The first line of the worksheet requires the parents to enter their gross monthly income, which is defined as *not* including "the amount of child support actually paid by a parent in compliance with a court order for the support of prior children." Section 40-4-11.1(C)(2)(d). While we leave the actual calculations to be performed on remand, it is evident that the amount Father paid monthly for the support of Adam pursuant to a court order ($400 at the time of the special master's February 21, 2001 report) must be deducted from Father's income. Because Father's net obligation to Child is based on the lower gross income figure resulting after the deduction, monthly support for Child will be less than it would have been absent the support obligation for Adam.

**Support for Third Child Should Not Have Been Deducted From Father's Income**

**{14}** It is less clear whether the support Father paid monthly for Ryan, the youngest child, should also be deducted in calculating Father's gross income to be used on Worksheet A for Child. As discussed above, the definition of "gross monthly income" for purposes of calculating child support requires deduction of court-ordered support that a parent is paying for "prior children." *Id.* The instructions for Line 1 of Worksheet A, however, state, "[i]f a parent pays child support by court order to *other* children, subtract from gross income." Section 40-4-11.1(K), Instructions for Worksheet A (emphasis added). While Ryan is not a "prior" child with respect to Child in chronological birth order, he is an "other" child.

**{15}** Whether support that Father paid for Ryan should have been deducted from Father's income in calculating Child's support presents a question of statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "To understand a statute's meaning, we must examine the words used, the context within which the words are used, the

5

purpose of the statute, and its legislative history." *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 7, 124 N.M. 754, 955 P.2d 683 (internal quotation marks and citation omitted).

**{16}**    We first conclude that the use of "prior children" in the text of Section 40-4-11.1(C)(2)(d) controls over the use of "other children" in the instructions for Worksheet A. Both the text and the instructions are part of the statute as enacted by the Legislature. 1991 N.M. Laws, ch. 206, § 1.  Where two statutory "provisions cannot be harmonized, the specific section governs over the general regardless." *City of Albuquerque v. N.M. State Corp. Comm'n*, 93 N.M. 719, 721, 605 P.2d 227, 229 (1979).  Thus, the term "prior children" governs because it is more specific than the term "other children," which would include both prior and subsequent children.

**{17}**    The term "prior children" in Section 40-4-11.1(C)(2)(d) is best understood as referring to the birth order of the children because of the proximity of the modifier "prior" to the word "children."  If the Legislature had meant that support ordered earlier in time for other children, regardless of birth order, should be deducted in calculating gross income, it would not likely have placed the words "prior" and "children" next to each other and would have otherwise made clear that the concept of "prior" applied to the timing of the court orders.

**{18}**    We further conclude that interpreting "prior" to refer to birth order and not to the timing of the child support orders better accords with one of the purposes of the child support guidelines specified in Section 40-4-11.1(B)(2),  to "make awards more equitable by ensuring more consistent treatment of persons in similar circumstances."  In a case such as the present one, where there are three children but the third child's support is established by court order before the second child's, there would be an unnecessarily large disparity in the outcome as each child's support ends, typically when the child turns eighteen.  To illustrate, consider three children, with the second and third born two and four years, respectively, after the first, with all three children entitled to support for eighteen years. When the first child turns eighteen, the amount of his or her support is no longer deducted from the paying parent's income in determining gross income.  Both of the other children thus benefit to some extent from the higher gross income that becomes available. If the third child in birth order, the youngest, were given priority over the middle child, that youngest child would receive the full, no-deduction amount under the guidelines for the next four years, in addition to having received a higher amount than the middle child for the preceding fourteen years.  If, conversely, the children were prioritized in order of birth, the youngest child would receive the lowest amount of the three for fourteen years, a somewhat higher amount for the next two years, and the full, no-deduction amount for the last two years before turning eighteen.  Given that under the calculations used in Worksheet A subsequent children necessarily receive a lower amount as long as support is being paid for earlier children, it seems more equitable to minimize the discrepancy by performing the calculation according to birth order rather than date of judgment.

**Relying On the Garnishment Statute to Set Support Was Incorrect**

6

**{19}** In determining that $300 per month was an appropriate amount of support for Child, the special master relied on the garnishment statute, which provides that "[t]he maximum amount which may be taken from a spouse's disposable earnings under both the garnishment procedure and the wage deduction procedure for the enforcement of child support is fifty percent of the spouse's disposable earnings." Section 35-12-7(C); *see also* § 40-4A-6(B). This statute addresses the manner in which a child support obligation may be collected. It does not place a limit on or otherwise address the amount of support that may be owed nor does it represent any criterion for calculating support under the guidelines.

**{20}** Other statutes address the remedies available for any hardship that a child support obligor may incur. Section 40-4-11.2 provides: "Circumstances creating a substantial hardship in the obligor, obligee or subject children may justify a deviation upward or downward from the amount that would otherwise be payable under the guidelines." NMSA 1978, Section 40-4-11.4(A) (1991) provides: "A court may modify a child support obligation upon a showing of material and substantial changes in circumstances subsequent to the adjudication of the pre-existing order." Finally, Section 40-4-11.1(J) provides:

> Whenever application of the child support guidelines set forth in this section requires a person to pay to another person more than forty percent of the paying person's gross income for a single child support obligation for current support, there shall be a presumption of a substantial hardship, justifying a deviation from the guidelines.

In connection with these remedies, we observe that the special master found: "Father subsequently sought to have all three of his support cases considered together. However[,] he was not able to bring Adam's case [ ] before this [c]ourt since that matter is before the District Court in the Twelfth Judicial District." We further observe that if support for Child had been ordered pursuant to the guidelines, and if this support together with Adam's and Ryan's worked a hardship on Father, he could have moved for modification of Adam's and Ryan's support in light of his statutory obligation to support Child. A motion to modify support in Ryan's case apparently was before the special master, as Ryan's case, like Child's, was under the jurisdiction of the Second Judicial District Court. The record proper does not indicate whether any modification was made in Ryan's case.

**{21}** Applying the above considerations, we conclude that the special master should have first applied the guidelines to calculate support for Child, placing Child second in priority between Adam and Ryan to reflect the children's birth order. Thus, on Worksheet A for Child, only the court-ordered support for Adam should have been deducted in calculating Father's gross income. We remand for recalculation of Child's support using this procedure.

**CALCULATION OF ARREARAGE**

**{22}** Mother asserts that Special Master Loughren, in his report filed February 21, 2001, used February 2000 rather than March 1998 as the ending date of the period during which

Mother received no child support from Father and received no public assistance for forty-three of the months during the period that began with Child's birth on June 15, 1990. Special Master Loughren's report makes the following findings and recommendations. Using $300 per month as the appropriate amount of child support owed by Father for each of the forty-three months at issue, the total owed would be $12,900. The special master then noted that during the period between Child's birth and February 2000, Father paid $130 per month for nine months and $205 per month for ten months, for a total of $3220. The special master concluded that Father was thus entitled to a $3220 credit against the $12,900 arrearage, leaving a net arrearage of $9680. The special master recommended that Father pay $300 per month to Mother as ongoing child support effective December 1999.

**{23}** Mother contends, and we agree, that the special master's calculation of the arrearage was incorrect. The forty-three months during which Mother received no public assistance and no child support from Father ended in March 1998. The $12,900 arrearage accrued during this period. Pursuant to a minute order entered on April 24, 1998, Mother began receiving $130 per month from Father. She received $130 per month for nine months and then $205 per month from Father for an additional ten months pursuant to another order entered on February 10, 1999. These payments from Father totaled $3220, as the special master calculated. According to the special master's later recommendation that Father should have been paying $300 per month during this nineteen-month period, Father actually owed a total of $5700 for the period. Because he only paid $3220, he should have been assessed an additional $2480 rather than being credited for $3220. Adding this $2480 to the $12,900 assessed for the forty-three months during which Mother received no public assistance, the total arrearage for the period prior to the special master's December 30, 1999, recommendation would have been $15,380.

**{24}** As discussed in the preceding section, the $300 per month figure that the special master recommended was improperly determined and must be recalculated using the child support guidelines. Thus, use of the $300 figure in the discussion immediately above is only for purposes of illustrating the flaw in the special master's methodology. On remand, the correct monthly figure as determined from the guidelines will apply to recalculation of the arrearage at issue.

**SANCTION FOR NON-APPEARANCE**

**{25}** Mother contends that the district court improperly awarded attorney fees of $350 to Father after she failed to appear at a hearing on September 9, 2005. In her motion to set aside the order awarding fees, Mother asserts that she notified Father's attorney, left phone messages for the judge approximately one hour before the scheduled hearing, and had medical problems which caused her failure to appear. The motion offered to provide medical documentation. The hearing set on the motion was vacated by Mother and never pursued.

**{26}** An appellate court will "entrust sanctions short of dismissal to the sound discretion

8

of the trial court." *Lewis v. Samson*, 2001-NMSC-035, ¶ 13, 131 N.M. 317, 35 P.3d 972. "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." *Bustos v. Bustos*, 2000-NMCA-040, ¶ 24, 128 N.M. 842, 999 P.2d 1074. In this case, Mother failed to pursue her motion to set aside the sanctions. We can go no further.

**{27}** In its order awarding attorney fees, the district court noted that Mother had failed to appear at a previous hearing that she had requested and that on both that occasion and the present one Father and his attorney had appeared in person. We further observe that while Mother's motion to set aside the order refers to surgeries several weeks earlier and an extensive medical history, it does not explain why this history prevented her from either attending the hearing or moving to reschedule it in a timely manner. In these circumstances, we find no abuse of discretion.

**CONCLUSION**

**{28}** We remand to the district court for recalculation of support for Child according to the guidelines, correction of the methodological error in crediting Father for certain payments he made, and other proceedings consistent with this opinion. We affirm the district court's order granting attorney fees to Father based on Mother's failure to appear at a hearing.

**{29}    IT IS SO ORDERED.**

 

 

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

 

**JAMES J. WECHSLER, Judge**

 

**MICHAEL D. BUSTAMANTE, Judge**

 

 

**Topic Index for *Thompson v. Dehne*, No. 27,650**

**AE**              **APPEAL AND ERROR**
AE-SR              Standard of Review
AE-TA              Timeliness of Appeal

**DR**              **DOMESTIC RELATIONS**
DR-CT              Child Support

**ST**                       **STATUTES**
ST-IP                      Interpretation