This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JONIE MARQUEZ, f/k/a**
**JONIE COPELAND,**

Petitioner-Appellee,

v.                                                                      NO. 29,476

**MICHAEL RAY COPELAND,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Judge**

Klipstine & Honigmann, LLC
Melissa A. Honigmann
Hobbs, NM

for Appellee

Maddox, Holloman & Kirksey, P.C.
Lee A. Kirksey
Andrew J. LeMieux
Hobbs, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

In this appeal, Michael Ray Copeland (Father) contends that the district

court unconstitutionally applied NMSA 1978, Section 40-4-7(B)(3)(b) (1997). Relying on that statute, passed six years after the original order of child support, the court extended Father's obligation to Jacob Daniel Copeland (Child) until Child's high school graduation, despite the court's original order and a binding agreement between Father and Jonie Marquez (Mother) that support would end at Child's emancipation. District courts have continuing jurisdiction over child support matters, NMSA 1978, § 40-6A-205 (2005), and for that reason, Father argues this case was still pending at the time Section 40-4-7(B)(3)(b) was applied. He therefore requests reversal on the basis that the district court violated N.M. Const. art. IV, Section 34, which provides: "No act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."

For the reasons set forth below, we hold that a case does not continue in a "pending" status under our Constitution simply because the district court maintains continuing jurisdiction over its subject matter. Accordingly, we affirm.

**BACKGROUND**

Child was born on July 19, 1988. On September 11, 1991, the district court issued a stipulated decree dissolving Mother and Father's marriage. That decree granted joint legal custody of Child to both parents, awarded physical custody to

Mother, and ordered Father to pay child support. As the parties had previously agreed, the court ordered Father to pay "Two Hundred, Fifty ($250) Dollars per month beginning on the 1st day of October, 1991, and continuing on or before the 1st day of each month thereafter until further order of this [c]ourt or until said child is emancipated." The record indicates no further legal activity for the next sixteen years.

Then, on November 15, 2006, four months after Child's eighteenth birthday, Mother filed a motion to modify child support in which she asked the court to adjust Father's obligation to reflect "a substantial and material change of circumstances." Father responded by citing the 1991 divorce decree, arguing that his child support obligation was complete upon Child's emancipation and directing the court's attention to NMSA 1978, Section 28-6-1(A) (1973), which establishes the age of majority at eighteen years. He argued that the only statute allowing for post-emancipation modification had not been passed until 1997 and was non-retroactive. *See* § 40-4-7(B)(3)(b) (giving courts the authority to extend child support obligations until completion of high school or until the child's nineteenth birthday). Thus, Father contended, Section 40-4-7(B)(3)(b) could not be applied to a 1991 divorce decree because the law "was only effective after 1997."

The court held a hearing, and on March 4, 2009, granted Mother's motion.

3

Although it lowered Father's monthly child support obligation to $200, the court ordered Father to continue payments, despite Child's emancipation, through May 31, 2007, "which is the date [C]hild is scheduled to graduate from [h]igh [s]chool." In this appeal, Father reasserts his previous objection. Specifically, he argues: (1) the district court retroactively applied Section 40-4-7(B)(3)(b) in violation of Article IV, Section 34 of the New Mexico Constitution; (2) the district court should have instead applied the previous version of Section 40-4-7, which was effective at the time of the 1991 divorce decree; and (3) the district court improperly refused to enforce the agreement between the parties that child support would terminate at Child's emancipation.

The issues we consider in this appeal present questions of law. We review them de novo. *Thompson v. Dehne*, 2009-NMCA-120, ¶ 15, 147 N.M. 283, 220 P.3d 1132.

**DISCUSSION**

**1.    Section 40-4-7**

The child support rule currently found in Section 40-4-7 has taken several forms since it was originally adopted in 1901. *See* 1901 N.M. Laws, Ch. 62, § 27 (as amended). Father argues the district court should have applied the version in effect at the time of the parties' 1991 divorce, which restricts the court to setting

4

child support for "minor children." 1973 N.M. Laws, Ch. 319, § 7 (stating that the court "may set apart out of the property of the respective parties, such portion thereof, for the maintenance and education of their minor children, as may seem just and proper"). Mother contends the district court correctly applied the current version, which was in effect at the time the court ruled on her motion to modify child support. That version was passed in 1997 and permits the court to "set apart out of the property or income of the respective parties such portion for the maintenance and education of . . . their children until the children's graduation from high school if the children are emancipated only by age, are under nineteen and are attending high school[.]" Section 40-4-7(B)(3)(b).

**2. This Matter Was No Longer "Pending" at the Time the District Court Applied Section 40-4-7**

The New Mexico Constitution provides that "No act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." N.M. Const. art. IV, § 34. Not long after New Mexico's admission to the Union, our Supreme Court analyzed this language in *Stockard v. Hamilton*, 25 N.M. 240, 180 P. 294 (1919) and held

> The authorities as to what is a "pending case" are by no means uniform, and are of no great aid to the court in determining the meaning of the language in question. It has been held that a case is pending from the time it is instituted until the judgment has been satisfied; that a case is pending, although it has been stricken from the

docket; that a case is pending until finally disposed of, and in a divorce action it is pending as long as the parties thereto survive. The definitions of a pending case vary with the construction of each particular statute. We have been unable to find a constitutional provision like our own. The word "pending," according to Webster and Century Dictionary, means "depending," "remaining undecided," "not terminated," and this meaning of the word should be adopted in this connection. The evident intention of the Constitution is to *prevent legislation interference with matters of evidence and procedure in cases that are in the process or course of litigation in the various courts of the state, and which have not been concluded, finished, or determined by a final judgment.*

*Id.* at 244-245, 180 P. at 295 (citation omitted) (emphasis added). In this regard, we are not persuaded by Father's argument that the instant case, because it is a divorce action, remains in a pending status "as long as the parties thereto survive." *Id*. Father takes this language out of context and thereby misinterprets the Court's holding in *Stockard*. We read the passage simply to hold that a pending case is one in which the procedural and evidentiary posture during litigation should not be changed by legislative fiat. Pending cases are unconcluded, unfinished, or not yet finalized. They depend upon established procedure and predictable evidentiary rules. They are unsupported by a final judgment or remain "in the process or course of litigation." *Id*.; *see State v. Lucero*, 2007-NMSC-041, ¶ 14, 142 N.M. 102, 163 P.3d 489 (holding that Article IV, Section 34 seeks to prevent interference with cases that are "ongoing" and in which no "final judgment" has issued); *In re Held Orders of U.S. West Communications, Inc.*, 1999-NMSC-024, ¶

6

13, 127 N.M. 375, 981 P.2d 789 (finding a case is no longer pending once "a final judgment is filed").

*Phelps v. Phelps*, 85 N.M. 62, 509 P.2d 254 (1973) further illustrates this principle in a child support context and provides a close analogue to the present facts. In that case, the Court considered a 1967 divorce decree requiring Father to pay child support until the child reached age twenty-one or became emancipated. *Id.* at 63-64, 509 P.2d at 255-56. Father discontinued child support payments when the child turned eighteen, arguing that he did so based on a 1971 statute that established eighteen as the age of majority in New Mexico. *Id.* at 63, 509 P.2d at 255. Mother argued that to allow a 1971 statute to govern a 1967 divorce decree would violate Article IV, Section 34 of the New Mexico Constitution. Because the district court maintains continuing jurisdiction over child support, she contended, the case remained in a pending status. *Id.* at 65, 509 P.2d at 257. The Court was not persuaded.

> Although the court below had continuing jurisdiction to modify its 1967 decree . . . the 1967 decree is considered final and entitled to full faith and credit under [Article IV, Section 1], of the United States Constitution.
> We do not interpret the case before us to be within the meaning of a "pending case" as provided for in [the New Mexico Constitution].

*Id*. at 65-66, 509 P.2d at 257-58.

The controversy before us requires an identical holding. Once a court has

7

issued a final divorce decree, the case is no longer pending for purposes of Article IV, Section 34, despite the court's continuing jurisdiction to reconsider child support at a later date. *See* § 40-6A-205. As our Supreme Court observed in *Smith v. Smith*, "A reservation of continuing jurisdiction by the [district] court in divorce proceedings does not destroy the finality of a final judgment, once the judgment is entered." 98 N.M. 468, 470, 649 P.2d 1381, 1383 (1982). There is no question the 1991 divorce decree entered by the court in this case was final. That decree effectively ended the dispute between the parties, and no further legal action appears in the record for sixteen years thereafter. Furthermore, both Father and Mother reference the 1991 order as a "final decree" in their briefs before this Court. In this case as in *Stockard*, once the court below entered its 1991 order, the matter was "concluded," "finished," and "final." 25 N.M. at 245, 180 P. 295. Nothing remained "undecided." *Id.* That the court reexamined child support sixteen years later does not mean the matter remained in a pending status that entire time. Thus, because this case was not pending at the time the district court applied Section 40-4-7, application of that statute was prospective, not retroactive as Father asserts.

Father relies heavily on a footnote in *Ottino v. Ottino*, 2001-NMCA-012, ¶ 5, n. 1, 130 N.M. 168, 21 P.3d 37, but he is wrong to do so. *Ottino* does not

8

analyze a child support order; it analyzes a contract, ancillary to a divorce decree, to pay for a child's post-minority education expenses. *Id.* ¶ 13. In that case, father successfully argued in the district court that it lacked jurisdiction to enforce the support order. *Id.* ¶ 4. Mother took no appeal from that ruling. Instead, she and child filed a contract claim in another court asserting their rights under the support contract. *Id.* They were again unsuccessful and appealed to this Court. *Id.* We reversed. *Id.* ¶ 1. Because district courts have general jurisdiction over contract matters, we held that Section 40-4-7 (1993) should not foreclose enforcement as father argued. *Id.* ¶ 14.

The case before us now is distinguishable. In this case, the lower court was not asked to enforce a contract for post-minority support. In fact, it did just the opposite by modifying the child support amount set in the divorce from $250 per month, ending at emancipation, to $200 per month, continuing through Child's high school graduation. Moreover, Father's objection is constitutional in nature. *Ottino* did not consider the question of whether a case is pending under Article IV, Section 34. Thus, *Ottino* is unpersuasive for the proposition Father indicates.

As long as jurisdiction is proper, a court may always adjust the amount of child support, and it may do so by either enforcing or disregarding agreements between the parties. *See Mintz v. Zoernig*, 2008-NMCA-162, ¶ 18, 145 N.M. 362,

9

198 P.3d 861, *cert. denied*, 2008-NMCERT-011, 145 N.M. 531, 202 P.3d 124. Courts may likewise modify child support by applying, or deviating from, the New Mexico child support guidelines. NMSA 1978, § 40-4-11.2 (1989). In setting and modifying child support, our courts are guided primarily by the best interests of children and the financial means of parents. *In re Adoption of John Doe*, 98 N.M 340, 346, 648 P.2d 798, 804 (Ct. App. 1982); *DeTevis v.Aragon*, 104 N.M. 793, 800, 727 P.2d 558, 565 (Ct. App. 1986).

**3. The Court's Action Was Consistent With Both the Final Decree and New Mexico Law**

Finally, we reject Father's argument that the court improperly refused to enforce the 1991 final decree. In his brief, Father contends that "Mother and Father in this case intended to set Father's child support obligation to terminate upon the Child's emancipation, not to lengthen it beyond the age of majority. The plain language of the [f]inal [d]ecree manifests this intent." We disagree. While it is true that the final decree provides for continuing support through emancipation, it also clearly states that support may be modified by "further order of this [c]ourt." This language clearly effectuates the rule announced in *Spingola v. Spingola*, that all agreements for child support remain modifiable under the "strong public policy of New Mexico" favoring children's best interests. 91 N.M. 737, 741, 580 P.2d

10

958, 962 (1978). We therefore hold that the court below properly exercised its authority to modify the level of child support Father was required to pay.

**CONCLUSION**

Based on the foregoing, we affirm.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**CELIA FOY CASTILLO, Judge**

_____

**LINDA M. VANZI, Judge**