2018 IL App (1st) 170861
No. 1-17-0861
December 24, 2018

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1, | ) ) ) | Appeal from the Circuit Court Of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 11 M6 4632 |
| v. | ) ) | The Honorable Kathleen Ann Panozzo, |
| DEBORAH OGUNBIYI and EMMANUEL OGUNBIYI, | ) ) ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Griffin concurred in the judgment and opinion.

**OPINION**

¶ 1    Deborah Ogunbiyi (Deborah) did not repay her student loans. When she found a job paying $573.35 per week, the note holder sought an order garnishing 15% of her pretax income. The Cook County circuit court found that the garnishment would impose excessive hardship on Deborah and ordered Deborah to pay $100 per month until she paid off the debt. The note holder appeals. We find that the legislature expressly disallowed the exercise of judicial discretion in ordering wage garnishment, even in cases of extreme hardship. We

reverse the circuit court's order and remand for further proceedings on the application for a wage deduction order.

¶ 2                                                    BACKGROUND

¶ 3        In 2004 Charter One Bank loaned Deborah $8000 for her enrollment at Lincoln College. Emmanuel Ogunbiyi (Emmanuel) cosigned the loan. In December 2011, National Collegiate Student Loan Trust 2004-1 (Trust) filed a complaint against Deborah and Emmanuel, alleging that Deborah and Emmanuel defaulted on the loan, and that Charter One sold its interest in the loan to the Trust. The Trust sought to recover more than $10,000 for the note. Deborah and Emmanuel were self-represented, but they filed no answer to the complaint. In 2012 the circuit court entered a default order against Deborah and Emmanuel, finding that they owed $10,472.91 as of the date of the order. The court subsequently entered an agreed judgment including a payment schedule.

¶ 4        In November 2016 the Trust sent to Enova International, Inc., a wage deduction notice, informing Enova that the Trust would ask the circuit court to enter a judgment against Enova for the garnishable wages Enova owed to Deborah. An attorney for the Trust certified that Deborah and Emmanuel repaid only $150 of the debt, which had grown to $14,529.65. The Trust filed a document asserting that Deborah earned $14.25 per hour working for Enova, for a total of $1146.70 in gross earnings for every two-week pay period. After taxes, Deborah received $1013.15 every paycheck, if she took no time off. The Trust asserted that the Code of Civil Procedure established its right to receive $172.01 ($1146.70 x 0.15) from each paycheck. The deduction would leave Deborah with $841.14 ($1013.15 – $172.01) each pay period, for $21,869.64 per year ($841.14 x 26), if she took no time off.

¶ 5      Deborah appeared in court and persuaded the court that the wage deduction would impose excessive hardship on her. The trial court entered an order, dated January 31, 2017, dismissing the wage deduction action against Enova and directing Enova to "cease all withholdings and release" to Deborah her earnings.

¶ 6      The Trust filed a motion to vacate the dismissal of the wage deduction complaint. The Trust asserted that hardship could not provide grounds for the court to dismiss the complaint. The trial court denied the motion to vacate and ordered Deborah to pay the Trust $100 per month until she paid off the loan. The Trust filed a notice of appeal.

¶ 7                           ANALYSIS

¶ 8      The Trust argues on appeal only that the statute mandates garnishment of $172.01 from every one of Deborah's paychecks, regardless of hardship. The Trust did not include in the record on appeal a transcript of the hearing at which Deborah persuaded the court that the 15% deduction from her gross income will cause her economic hardship. On this record, the Trust cannot contest the trial court's factual finding that the garnishment of the maximum amount permitted by the statute will cause Deborah undue hardship.

¶ 9      We review the court's interpretation of the statute *de novo*. *Revolution Portfolio, LLC v. Beale*, 332 Ill. App. 3d 595, 600 (2002). The Trust relies solely on the language of the statute. The Trust cites no case that supports its assertion that the court lacks authority to take into account the hardship court orders will impose on litigants. The Trust did not mention a significant change in the wording of the statute.

¶ 10      Until 2007, section 12-803 of the Code of Civil Procedure provided that "The maximum wages *** subject to collection under a deduction order" could not exceed 15% of the

3

employee's gross pay, and the deduction order had to leave the employee with at least 45 times the federal minimum hourly wage each week. 735 ILCS 5/12-803 (West 2006). In 2007, the General Assembly enacted Public Act 95-661 (eff. Jan. 1, 2008), which amended several statutes. The Act eliminated from section 12-803 the word "maximum," so that "[t]he wages *** subject to collection under a deduction order" could not exceed either limit previously imposed. *Id.*; 735 ILCS 5/12-803 (West 2016). The governor issued an amendatory veto, specifically asking the legislature to put the word "maximum" back into section 12-803.

¶ 11    On October 10, 2007, the Illinois Senate voted to override the amendatory veto. 95th Ill. Gen. Assem., Senate Proceedings, Oct. 10, 2007, at 30-31. On October 11, the Illinois House considered the same veto. The transcript of House debates shows the following discussion:

"[Representative] Feigenholtz: *** In this legislation you have… you removed the word 'maximum' in the underlying Bill in the language. Is that correct?

[Representative] Mathias: That's correct.

Feigenholtz: So, right now, judges have discretion when deciding how much wages are to be garnished. Is that correct?

Mathias: *** [O]ne (1) judge in particular in Cook County *** interpreted that that he could, in effect, not follow the percentage that's listed in the law and lower that percentage and basically, that's what we're trying to correct. I believe it was the original intent of the Bill to make it a set amount ***.

* * *

4

Feigenholtz: So, in current statute and also the intent of this Bill is to continue under those circumstances that are unique to allow certain discretions for the judiciary. Is that true? ***

Mathias: The exemption is not discretionary. ***

Feigenholtz: So, is what you're saying that judges will still have the flexibility in hardship cases to order a smaller percentage of garnishment?

Mathias: No that isn't correct ***.

Feigenholtz: But if the life circumstances of the *** person whose wages are to be garnished change, they have an opportunity to go back to the judge?

Mathias: No, they do not.

Feigenholtz: So… so, for instance, if a father of *** seven (7) children who *** has to provide a lot of support for a family, they're not allowed to go back to court? *** I'm a little concerned that there are going to be some, a few situations, a few hardship cases, where a smaller percentage of garnishment might be more livable.

Mathias: Again, if someone's wages go below the formula in the Bill, then they would not have any of their wages *** deducted. These, again, if they do not meet that criteria, then the law is followed.

Feigenholtz: And it doesn't have anything to do with how big their family is, the federal poverty level rate, the only mathematical calculation is forty-five (45) times [federal] minimum wage?

Mathias: Yeah. ***

* * *

[Representative] Lang: *** [T]o not override this Veto is to say that people don't have to pay their bills. To not override this Veto means that you're saying to businesses, well, maybe you'll collect the money people owe you, maybe you won't. To not override the Veto says that we're going to allow judges their own discretion as to who's going to pay their bills and who is not. *** The wage deduction laws allow creditors *** a deduction of a small amount from a weekly wage to recover the money owed. The size of the person's family is *** not important because if you buy a TV and you don't pay it back whether you've got twelve (12) children or no children, you should pay back the money for the TV you bought. If we don't do this, we're going to continue to have judges who decide on their own who pays what, under what circumstances they pay it. ***

* * *

[Representative] Turner: So, if you were to summarize what we're doing with this Bill, it pretty much is dealing with the issue of judicial discretion. Am I correct?

Mathias: Yes. ***

* * *

[Representative] Davis, M.: *** I think that if a person owes a debt he should be responsible for paying it, but I do not believe there should be no consideration for his other responsibilities, a new family, college students, a baby that's ill. *** [T]here are many considerations and I really like the law currently that allows a judge to make a determination of should it be a 15 percent deduction, a zero, a 1 percent, a 2

6

percent. I don't like the idea of someone settling how much it should be before they know any of the circumstances. *** This is a Bill to help someone else, but it is not to help constituents or working people in the State of Illinois." 95th Ill. Gen. Assem., House Proceedings, Oct. 11, 2007, at 100-14.

¶ 12 Ninety-two representatives voted to override the veto. Only nine voted to sustain it. *Id.* at 115.

¶ 13 We have found no Illinois case deciding whether section 12-803, prior to 2007, permitted the circuit court to exercise discretion to order garnishment of an amount less than the maximum set by section 12-803. Courts in other jurisdictions interpreting similar statutes held that the garnishment statutes set only an upper limit on garnishable wages, and courts had discretion to order garnishment of lesser amounts while still requiring repayment of the entire debt. See, *e.g.*, *Fishler v. Fishler*, 63 N.Y.S.3d 445, 447-48 (N.Y. App. Div. 2017); *Gerber v. Holcomb*, No. W2005-02794-COA-R3-CV, 2006 WL 3019731, at *2-3 (Tenn. Ct. App. Oct. 25, 2006); *Thompson v. Dehne*, 2009-NMCA-120, ¶¶ 19-20, 147 N.M. 283, 220 P.3d 1132; *In re Chambers*, 5 S.W.3d 341, 343 (Tex. Ct. App. 1999). By removing the word "maximum" from the statute, the legislature showed its intent to deny the courts the discretion to enter a wage deduction order in an amount less than the amount set by section 12-803.

¶ 14 The circuit court here did not enter a wage deduction order in a lesser amount. The court entered an order (1) denying the motion for a wage deduction order and (2) dismissing Enova from the case, with the admonishment that Enova must continue paying Deborah her after-tax wages. The court then ordered Deborah to pay the Trust $100 per month to pay off her

student loans. Courts in other jurisdictions have entered similar orders denying wage garnishments while directing the judgment debtor to adhere to a payment schedule set by the court. See *American Acceptance Co. v. Willis*, 984 N.E.2d 653, 655 (Ind. Ct. App. 2013); *Warner Bros. Records Inc. v. Patnode*, No. 2:06-CV-160, 2010 WL 431908, \*1 (W.D. Mich. Feb 5., 2010); *M.M. v. T.M.*, 17 N.Y.S.3d 588, 599-600 (N.Y. Sup. Ct. 2015).

¶ 15    The *M.M.* court found that it had "broad discretion to regulate the enforcement of a money judgment to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." *M.M.*, 17 N.Y.S.3d at 600. A New York statute provides, "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." N.Y. C.P.L.R. 5240 (McKinney 2016). We find no similar statute in Illinois. Section 12-808(e) of the Code of Civil Procedure apparently disallows the exercise of judicial discretion, as it states that, upon proof of the debt and the lack of any proof of the extremely limited grounds for denying wage deduction, "an order shall be entered compelling the employer to deduct from wages of the judgment debtor \*\*\* an amount which is" the amount set by section 12-803. 735 ILCS 5/12-808(e) (West 2016). Public Act 95-661 also amended section 12-808(e), which, prior to 2007, said the deduction order must set an "amount not to exceed" the amount set by section 12-803. Compare 735 ILCS 5/12-808(e) (West 2006), with 735 ILCS 5/12-808(e) (West 2016).

¶ 16    We hold that the wage deduction provisions of the Code of Civil Procedure leave the circuit court no discretion to deny a request for a wage deduction order on grounds of

extreme hardship. We commend Judge Panozzo's consideration of the equities that should determine the amounts taken from a debtor and the time allotted for repayment of a debt.

¶ 17 Recognizing the limited role of the courts, constrained to give effect to the clear intent of the legislature, we must reverse the circuit court's order and remand for further proceedings on the application for a wage deduction order. We implore the legislature to consider its amendment to section 12-803 and to adopt a statute similar to section 5240 of the New York Civil Practice Law and Rules (N.Y. C.P.L.R. 5240 (McKinney 2016)).

¶ 18                                                    CONCLUSION

¶ 19 The legislature, in 2007, decided to take 15% of wages, regardless of the extreme hardship such a loss will impose on many persons. Because the legislature explicitly eliminated judicial discretion in the determination of the amount to deduct from wages, we must reverse the circuit court's order and remand for further proceedings in accord with this opinion.

¶ 20 Reversed and remanded.