1997–NMCA–011

934 P.2d 279

**Amparo G. COHN, Petitioner–Appellee,**

v.

**Robert COHN, Respondent–Appellant.**

No. 16409.

Court of Appeals of New Mexico.

Dec. 12, 1996.

Certiorari Denied Jan. 28, 1997.

---

Brigitte Lotze, Taos, for Petitioner–Appellee.

Andres S. Vargas, Taos, for Respondent–Appellant.

*OPINION*

BUSTAMANTE, Judge.

1.  Robert Cohn appeals from a judgment finding him liable for $45,868.86 in past-due child support and upholding a 1986 final judgment and decree that included an award of $250 per month to Amparo Cohn for support of their son, George, who is now thirty-seven years old and has been severely mentally and physically handicapped since birth. We affirm.

*FACTS AND PROCEEDINGS*

2.  The case was originally filed in August 1976, when Amparo petitioned for a legal separation and support for George, who was then seventeen years old. Robert counter-claimed for divorce, and in September 1976 the parties stipulated to an order for Robert to pay the mortgage on the family residence and $250 per month until George reached his eighteenth birthday. In April 1977, the district court entered a partial final decree dissolving the marriage and reserving decision on all other issues. Nine years later, after a trial on the merits the court divided all community property and ordered Robert

> to pay to [Amparo] the sum of $250.00 per month for the support of [George], beginning in the month of October, 1986, and for each month thereafter until further order of the Court. If, however, this Court should be held without jurisdiction to order child support to be paid by Robert for the benefit of George, the Court expressly reserves to itself the power and authority to determine the propriety of a grant of alimony to Amparo, so as to assure a caretaker for George.

George had been, and continues to be, cared for by Amparo. The district court found that "George has the mind of a 3–year [old] child, and is in fact incompetent; he suffers perhaps every other day from epileptic seizures ... [and] has to be helped in bathing and in dressing [and] ... has to be looked after constantly, to the point of his not being able to be left alone, unsupervised[.]" Presumably because Amparo had to spend her time caring for their son, the district court awarded Robert the two community businesses, concluding:

that the parties and their son George will be better off if Robert is awarded the cafe, with which he is more likely to be able to make a reasonable return than Amparo, and also if Robert is afforded space on the El Prado land within which he may continue to store and headquarter his wrecker service and other cars and salvage, so as to ... encourage a better livelihood to be made from the towing operation.

Thus, the district court divided the property in a manner that it felt would best serve the economic needs of Robert, Amparo, and George if Robert was required to continue to assist in George's support. As authority for its division of assets and award for George's support the court cited

[t]he evolving common law ... that where a child is of weak body or mind, unable to care for himself after coming of age, the parent's duty to support the child continues as before and ceases only when the necessity for the support ceases. 59 Am. Jur.2d, Parent and Child, sec. 103[1]; *cf. Fitzgerald v. Valdez*, 77 N.M. 769, 776[, 427 P.2d 655, 659] (1967).

The district court concluded that our statute providing for alimony and support of children, NMSA 1978, § 40–4–7 (Repl. Pamp.1983), did not preclude it from requiring Robert to pay a monthly support obligation to Amparo for George's benefit.

3. Neither party appealed from the district court's final order, but Robert never paid the $250 per month ordered by the court. In 1993 Amparo filed a petition requesting an order to show cause why Robert should not be held in contempt for failing to pay the support award and requesting an award of arrearages plus statutory interest. The order was issued and Robert countered with a motion to set aside the prior support order for lack of jurisdiction to award post-majority support.

4. After an evidentiary hearing the district court concluded, in part, that: (1) because Robert failed to appeal the 1986 award within the time allowed by law he was foreclosed from challenging the judgment by the collateral bar rule affirmed in *State v. Bailey*, 118 N.M. 466, 882 P.2d 57 (Ct.App.1994); (2) even if the court in 1994 had no jurisdiction to enforce the ongoing effect of the 1986 judgment, Robert was required to pay the full amount of the arrearages plus the statutory interest that accrued through February 1, 1995; and (3) the 1986 judgment should remain in full force and effect. In the event of reversal on appeal on this third holding, the court reserved jurisdiction to determine whether the 1986 judgment reserved jurisdiction for the court to declare the $250 per month obligation as alimony and to award judgment accordingly, and to determine whether that judgment reserved jurisdiction for a determination of ongoing spousal support and to award judgment accordingly.

*ISSUES*

*There is a Common–Law Duty to Support Unemancipated Handicapped Children.*

5. Robert argues that only the legislature may require a parent to support an incapacitated child who has reached majority. We disagree. Although there is no case law directly on point in New Mexico, a common-law duty to support severely incapacitated children, regardless of whether they have attained the age of majority, has long existed. *See* M.C. Dransfield, Annotation, *Parent's Obligation to Support Adult Child*, 1 A.L.R.2d 910, § 5 (1948) and cases cited therein.

The generally accepted common-law rule is that once a child, being of sound mind and sound body, reaches the age of majority, the parents' legal duty to support the child ceases and will not be revived for any reason, including a subsequent disability. However, if a child is disabled at the time of reaching majority, many jurisdictions hold that the parental duty to provide support continues indefinitely, until the disability is removed. The theory behind this exception is that the continuing disability prevents the child from becoming emancipated, and because he is incapable of emancipation, he remains a minor in the eyes of the law. [Citations omitted.]

Noralyn O. Harlow, Annotation, *Postmajority Disability as Reviving Parental Duty to*

---

**1.** We note that this discussion is located in § 90 of the 1987 edition.

*Support Child,* 48 A.L.R.4th 919, 923 (1986). Our Supreme Court has indicated that the duty would be recognized in New Mexico. *Psomas v. Psomas,* 99 N.M. 606, 607–08, 661 P.2d 884, 885–86 (1982) (stating that the Supreme Court had recognized the exception in dictum in *Fitzgerald v. Valdez,* 77 N.M. 769, 776, 427 P.2d 655, 659 (1967) requiring support for incapacitated adult children), *overruled on other grounds by Walentowski v. Walentowski,* 100 N.M. 484, 487, 672 P.2d 657, 660 (1983). The Court in *Fitzgerald* stated that "[t]here is an exception to [the rule that the parental relationship is severed when the child reaches majority] where there is an infirmity of body or mind rendering the child unable to take care of itself and requiring the child to remain with the parent." 77 N.M. at 776, 427 P.2d at 659. *See also, Mason v. Mason,* 84 N.M. 720, 723, 507 P.2d 781, 784 (1973) (minority is a legal status conditioned primarily, but not entirely, upon age).

■ 6. We join the majority of jurisdictions that hold that parents have a common-law continuing duty to support a severely disabled child if, as in this case, the child was so disabled before reaching the age of majority. *See, e.g., Nelson v. Nelson,* 548 A.2d 109, 114–15 (D.C.1988) (holding that parent has a common-law duty to provide support for his disabled children beyond the age of majority, and citing cases suggesting its holding comports with the majority rule); *Caddo v. Caddo,* 468 N.E.2d 593, 594 (Ind.Ct. App.1984) (recognizing that whether emancipation has occurred is a question of fact, and holding that no emancipation occurs where due to illness or injury a child becomes so physically or mentally disabled he cannot provide for himself but must remain at home with a parent); *Kruvant v. Kruvant,* 100 N.J.Super. 107, 241 A.2d 259, 264–65 (App. Div.1968) (ex-wife is entitled to contribution towards costs of caring for adult disabled son who has a disorder that pre-existed his majority). *See generally* Comment, *The Parental Duty to Support Disabled Adult Children,* 9 DePaul L.Rev. 245, 249–50 (1960).

7. Section 40–4–7 as codified in 1986 provided:

A. In any proceeding for the dissolution of marriage, division of property, disposition of children or alimony, the court may make ... an order to restrain the use or disposition of the property of either party ... as in its discretion may seem just and proper....

B. On final hearing, the court:

.    .    .    .    .

(4) may make such an order for the ... care ... maintenance and education of the minor children ... as may seem just and proper....

C. ...The district court shall have exclusive jurisdiction of all matters pertaining to the ... care ... maintenance and education of the children, and with reference to the property decreed or funds created for their maintenance and education, so long as they, or any of them remain minors.

8. We discern in this language no intent on the part of the legislature to absolve parents of all responsibility to provide financial support for severely mentally or physically disabled children after their eighteenth birthday. There is certainly nothing in the statute which indicates an intent to eliminate the common-law rule we adopt today. Indeed, the common-law rule is not restricted to families in which the parents are divorced; it also applies to intact families that would never be governed by a statute on marital dissolution. It would therefore be remarkable if Section 40–4–7 had been intended by the legislature to abrogate the common-law duty. Rather, we are confident that the legislature did not consider, and had no intent to regulate, the obligations of divorced parents with respect to their severely disabled children who have passed the age of majority.

■ 9. We last address Robert's argument that Amparo's 1986 and 1995 judgments are void because the district court lost jurisdiction over the support issues thirty days after the April 6, 1977, entry of its partial final judgment dissolving the marriage. Robert argues that because the court did not award alimony or support in 1977, the court implicitly ruled that Amparo was not

entitled to alimony or child support and Amparo did not appeal from that ruling. We find Robert's argument to be specious. The judgment specifically decreed that "all other issues before this court shall be resolved after the presentation of additional evidence in this matter." The district court properly reserved jurisdiction over the issue of support.

*CONCLUSION*

10. We affirm the 1995 judgment of the district court on all issues. Amparo is awarded $2500 in attorney's fees and her costs on appeal.

11. **IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.

