# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00857-SCT

*BRUCE BURT*

*v.*

*AMBER D. BURT*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2000 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROSS R. BARNETT, JR. |
| ATTORNEYS FOR APPELLEE: | GAIL S. AKIN |
| | JAMES RANDAL WALLACE, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/23/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from a final judgment of the Hinds County Chancery Court, First Judicial District. Less than a year after she reached the age of twenty-one years, Amber Burt (Amber), filed suit against her father, Bruce Burt (Bruce), for child support unpaid since 1989.[1] The chancellor, after hearing testimony from Amber, Bruce and Bruce's former wife, entered an order requiring Bruce to pay Amber $29,795 in back child support plus $13,882 interest. This amount, awarded solely to Amber, included the entire monthly sum ordered for both her and her brother in their parents' 1978 divorce. At the hearing there were numerous, short statements made regarding Bruce's son Todd (Amber's brother), who at the time of the hearing was 25 years old. However, Todd was not a party to this suit and no provision was asked for him, nor made for him when the chancellor granted the entire back child support award to Amber. The method of calculating the amount was determined by Gerald Lee, Ph.D. and stipulated to by the parties. However, Bruce's counsel added a handwritten statement to the stipulation, saying that they did "not admit that we owe anything." Following the chancellor's decision, Bruce timely filed a notice of appeal to this Court, raising two issues:

> **I. WHETHER THE TRIAL COURT'S ORDER WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE APPLICABLE LAW, AND ACCORDINGLY, WAS CLEARLY AND MANIFESTLY IN ERROR?**

> **II. WHETHER AMBER LACKS CLEAN HANDS?**

Finding no manifest error or abuse of discretion in the decision of the trial court, we affirm.[2]

**FACTS**

¶2. On December 20, 1978, Bruce and Amber's mother, Gloria Burt, was granted a divorce by the Hinds County Chancery Court. Bruce and Gloria had two children at the time of the divorce: Amber, who was born July 10, 1977, and Todd, who was born October 11, 1974. Under the terms of the 1978 divorce decree, Bruce was ordered to pay Gloria $275 per month in child support "for the minor children." There was no mention of any special needs or any special allocation between the children, so the presumption, albeit rebuttable, is that each was entitled to one half of the $275 each month. *Varner v. Varner*, 588 So. 2d 428, 434 (Miss. 1991).

¶3. Gloria died on January 24, 1989. Bruce did not make any child support payments after Gloria's death. Amber lived with her grandparents in Jackson, Mississippi, for several years following the death of her mother. At approximately 16 years of age, Amber began to live in a variety of places, all of which were in the Jackson area. During the summer of 1993 she lived in an apartment with her friend Stephanie and Stephanie's mother. Amber lived with her father for approximately four to six months during 1993 and 1994. Amber testified that she moved out of her father's home because she was uncomfortable with his drinking. Later, she moved in with her boyfriend at the time, where she lived from November, 1995 until July 1996.

¶4. During that same time, Amber worked several different places. She worked at Jan's Hallmark (20 to 30 hours per week) and then at Victoria's Secret (15 hours per week). She also worked as a waitress for a few months at Cucco's and Bennigan's restaurants. Amber apparently worked full-time at Mississippi Insurance Managers, and at the time of the hearing, she was employed by an engineering firm. Amber also attended school during part of this time.

¶5. Amber had no contact with her father for the seven years preceding the hearing. Bruce's ex-wife, Tina Nail Burt Price, testified that Bruce did attempt unsuccessfully to contact Amber on several occasions when she lived with her grandparents. Bruce testified that he was willing for his children to live with him when Amber left his home and that after she left he would have still welcomed her back into his home at any time.

¶6. During the hearing, Bruce contended that Amber's activities after she moved out of his home served to emancipate her. He pointed to her independent way of life, living with other families, friends and a boyfriend, claiming that those activities effectively emancipated her. As a result, Bruce contends Amber was not due any child support.

## STANDARD OF REVIEW

¶7. In cases involving alimony and child support we afford the chancellor considerable discretion. The chancellor's findings will not be reversed unless manifestly in error or an abuse of discretion. *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992). Our familiar rule of deference prohibits us from disturbing the factual finding of a chancellor unless it is manifestly wrong or clearly erroneous. *Bowers Window & Door Co. v. Dearman*, 549 So. 2d 1309, 1313 (Miss. 1989). For questions of law, our standard of review is de novo. *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

## ANALYSIS

### I. WHETHER THE TRIAL COURT'S ORDER WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE APPLICABLE LAW, AND ACCORDINGLY, WAS CLEARLY AND MANIFESTLY IN ERROR?

¶8.Within this broad assignment of error, Bruce first claims that the judgment was against the overwhelming weight of the evidence and the applicable law because Amber was an emancipated minor. Bruce cites *Rennie v. Rennie* , 718 So. 2d 1091, 1093 (Miss. 1998), as authority that the obligation to pay child support ends when a minor is emancipated. However, Bruce does not provide a specific date on which he believes Amber was emancipated and simply argues that the chancellor should have ruled that Amber was emancipated at some point prior to her reaching the age of maturity. Amber contends that the emancipation issue is irrelevant because emancipation is not a defense to past due child support. We agree. Bruce's reliance on *Rennie,* which is distinguishable from the instant case because it dealt with future obligations, not past due child support, is misplaced. This Court in *Rennie* exempted a father from future payments. The payments in the present case are past due, and now that Amber is an adult, there is no issue of future payments.

¶9. Emancipation was defined by this Court in *Caldwell v. Caldwell*, 579 So.2d 543, 549 (Miss. 1991) (citing *Pass v. Pass*, 238 Miss. 449, 454, 118 So. 2d 769, 771 (1960)), as follows:

> Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.

The statute governing emancipation is Miss. Code Ann. § 93-5-23 (Supp.2000) which reads in pertinent part as follows:

> The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
>
> (a) Attains the age of twenty-one (21) years, or
>
> (b) Marries, or
>
> (c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
>
> (d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.

¶10. The statutory requirements for emancipation are clearly permissive and not mandatory; the court *may* determine that the child has been emancipated if any of the four factors are satisfied. The amount of support awarded by the chancellor was clearly calculated to cease when Amber reached age twenty-one, thus the first factor is not applicable. The second factor is irrelevant because Amber did not marry. Bruce argues the full-time employment aspect of the third and fourth factors was satisfied, but the record does not validate his argument The chancellor found that Amber's employment was not full-time until after she reached age twenty-one. The difference in calculations here is not significant. In fact, the difference could at least partially be explained by the chancellor having included in her calculations vacation time or other time that Amber may not have worked. Thus the third and fourth factors were not met since full time employment is a component of both.

¶11. Bruce also challenges the chancellor's finding that Amber lived with her boyfriend, for a summer, claiming that the record shows they lived together for nine months. Amber testified the two lived together for four to six months. The chancellor's language may be imprecise but the finding certainly does not rise to the level of contradicting the overwhelming weight of the evidence.

¶12. It is significant that Bruce never petitioned the chancery court for a modification of his child support obligations. Bruce merely stopped making payments when Gloria died. The law is unequivocal on this issue. Once a child support payment becomes due, that payment vests in the child. Once the payments are vested, "they cannot be modified or forgiven by the courts." ***Tanner v. Roland***, 598 So.2d 783, 786 (Miss. 1992) ; ***Thurman v. Thurman***, 559 So.2d 1014, 1016-17 (Miss. 1990). Each payment that becomes due and remains unpaid "becomes a 'judgment' against the supporting parent." ***Tanner***, 598 So.2d at 786; ***Cunliffe v. Swartzfager***, 437 So.2d 43, 45-46 (Miss. 1983). The only defense thereto is payment. ***Tanner***, 598 So.2d at 786; ***Varner***, 588 So.2d at 433. The delinquent parent is liable also for the interest which has accrued on each unpaid support payment from the time it was due. ***Tanner***, 598 So.2d at 786; ***Brand v. Brand***, 482 So.2d 236, 238 (Miss. 1986).

¶13. Bruce's second reason for challenging the chancellor's order as being against the overwhelming weight of the evidence was the finding that Amber's decision to leave Bruce's home was predicated on his continuous intoxication. Bruce claims the record lacked sufficient evidence for such a finding. However, this issue was addressed in the testimony of Amber, Bruce, and Tina (Bruce's ex-wife). It is perplexing that Bruce now objects to a lack of evidence to justify this finding when it was his counsel who objected to the line of questioning when Amber was queried concerning times when she was around her dad while he was drinking. Bruce's counsel objected stating "we are here for child support, not custody." The objection was sustained. Based on the testimony of Amber, Bruce and his witness, Tina, there was more than sufficient evidence in the record for such a finding by the chancellor.

¶14. In reviewing such findings, this Court recognizes that the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses. ***Hall v. State ex rel. Waller***, 247 Miss. 896, 903; 157 So.2d 781, 784 (1963). "Where there is conflicting evidence we must give great deference to the chancellor's findings." ***McElhaney v. City of Horn Lake***, 501 So. 2d 401, 403 (Miss.1987). Bruce's first assignment of error is without merit.

## II. WHETHER AMBER LACKS CLEAN HANDS?

¶15. Bruce argues an equitable maxim that "He who comes into equity must come with clean hands." ***Cole v. Hood***, 371 So. 2d 861, 863 (Miss. 1979). Bruce claims Amber did not have "clean hands" because she was unwilling to have a relationship with her father, and she was unwilling to live with him even though he was ready and willing to accept her in his home at any time. In fact, Amber had no contact with Bruce for the seven years preceding the hearing. The parties disagree over whether the lack of contact resulted from a voluntary decision by Amber to avoid her father or whether Bruce's alcohol consumption caused Amber to leave the home and caused her to be uncomfortable around her father. Although in the trial court Bruce did not label his defense the "clean hands doctrine," there was ample testimony of Amber's actions and Bruce's actions before the court.

¶16. The chancellor was in the best position to resolve this conflict and did so in favor of Amber. Because Bruce failed to raise the unclean hands defense below, he is procedurally barred from doing so on appeal. However, procedural bar aside, we find no manifest error in the chancellor's ruling in favor of Amber.

## CONCLUSION

¶17. Bruce's claims of error have no merit. The chancellor did not abuse her discretion in finding that Bruce owed the back child support payments plus interest. In addition, the chancellor's findings of fact regarding Amber's emancipation were not against the overwhelming weight of the evidence. Therefore, the judgment of the Hinds County Chancery Court is affirmed.

¶18. **AFFIRMED.**

> **PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J.**

> **McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶19. The majority and the chancellor have given the complete amount of joint child support intended for two children to one child, including a four-year time span in which Todd had already reached adult status. This amounts to a windfall and is contrary to our law. Once one of the children reaches the age of majority that particular child support is cut off automatically, without requiring Bruce to go back to court.

¶20. Also, because this case involves joint child support for two children, the principle set out in *Arender v. Smith County Hosp.*, 431 So.2d 491 (Miss. 1983), must apply. This case of back **joint child support** judgment is no different than *Arender* the wrongful death case in which the joint interest of all minor litigants involved merge into the adult, who must bring the lawsuit for and on behalf of all other minor siblings once he reaches 21 years of age. As we said in *Arender,* that right is forfeited for all if one of the joint interest holders (of the judgments) in the lawsuit is of the age of majority and fails to file suit before the statute of limitation abates the cause action. Amber's brother, Todd, was twenty-five years old when Amber brought suit for back child support, and he has therefore waived both his claim and Amber's claim for back child support due to the three-year statute of limitations. *Arender* should either be applied to this case, which would serve to bar Amber's cause of action, or *Arender* should be clearly overruled. If we do not overrule *Arender*, then the chancellor erred in not only the amount of back child support awarded, but in awarding any at all, which is currently precluded as a matter of law. I would overrule *Arender* and allow Amber to recover the unpaid child support from her father. Accordingly, I dissent.

¶21. In *Arender*, this Court held that the statute of limitations ran against all of the potential plaintiffs, even though two of them were minors at the time the cause of action accrued. "Where one of the parties to a joint action is of age when the cause of action accrues, the statute of limitations runs against all and when one is barred, all are barred." *Id.* at 493. In *Arender*, the husband of the deceased attempted to bring a medical negligence suit against the hospital and medical staff approximately one year after the statute of limitations had expired. This Court held that not only was the surviving spouse precluded from bringing suit, but the two minor children were also barred from bringing independent lawsuits due to the inaction of their father.

¶22. Miss. Code Ann. § 15-1-59 (2000) specifically states that when "any person entitled to bring any of the personal actions mentioned" is a minor at the time that the cause of action accrues, the statute of limitations will not begin to run until that person either reaches the age of twenty-one, or is emancipated. This Court held that the savings statute did not apply to a wrongful death action because it was not

specifically "mentioned within the chapter" containing section 15-1-59. *Arender* 431 So.2d at 492.

¶23. Rather, wrongful death actions are covered by the three-year limitation period which applies to "actions without prescribed period of limitation." Miss. Code Ann. § 15-1-49(1)(2000). Likewise, actions to recover for joint unpaid child support fall within section 15-1-49(1), and are subject to a three-year limitation period. While the holding in *Arender* was limited to wrongful death cases, the reasoning therein applies to the instant case, as well as all other causes of action covered by Miss. Code Ann. § 15-1-49(1).

¶24. Since this case involves joint child support for the two children, it creates the unique situation in which the principle set forth in *Arender* must apply: joint rights of minors. Like the minor plaintiffs in *Arender*, Amber was still a minor when the statute of limitations expired with regard to her brother's potential claim. Therefore, Amber is barred from seeking back joint child support unless we overrule *Arender*, and we should now take the opportunity to do so. Such a holding would comport with the lengthy history of Mississippi cases regarding the special status of minors in the judiciary. For well over a century, this Court has afforded special protection to the rights of minors. *Price v. Crone*, 44 Miss. 571, 575 (Miss. 1871).

> It is the duty of the chancellor to protect the interests of minors, whether the proper defense be made or not; and for this purpose, (the court) should look to the record and all its parts, and of its own motion, give to the minor the benefit of all objections and exceptions, as fully as if specially made in a pleading. The infant can waive none of its rights.

*Id*. (emphasis added).

¶25. In *Alack v. Phelps*, 230 So.2d 789, 792-93 (Miss.1970), we held that "children are under the disability of minority and cannot act for themselves. The equity court will protect their rights." In that case, two children, adopted by their grandparents, were allowed to bring suit through their guardian for the wrongful death of their natural father, even though the tortfeasor had already reached a settlement with the estate of the deceased father for the benefit of the minor child of the father's second marriage. *See also Khoury v. Saik*, 203 Miss 155, 162-63, 33 So.2d 616, 618 (1948) (holding that "[m]inors can waive nothing. In the law they are helpless, so much so that their representatives can waive nothing for them, and hence the answer and the appearance in court as a witness of this minor could not, and did not, bring her into court for the purpose of enabling the entry of a final decree against her.").

¶26. If Amber is incapable of waiving her own rights, and even guardians ad litem cannot waive the rights of minors, how then can we hold that Amber's adult brother can waive her rights merely by failing to assert his own? The actions (or inaction) of adult plaintiffs should not be allowed to forfeit the rights of minor plaintiffs merely because they were damaged by the same event or transaction. We must now either apply the principle of *Arender*, or clearly overrule it. I would overrule *Arender* and allow Amber to recover the unpaid child support from her father. Further, the chancellor erred in awarding Amber the full amount of joint child support for both children, even though Todd reached the age of twenty-one four years before she brought suit. Accordingly, I dissent.

     **EASLEY, J., JOINS THIS OPINION.**

1. Although most suits regarding payment of back child support are brought by the custodial parent on behalf of the child, there is no law which precludes an adult child from bringing suit in his or her own right. *See Varner v. Varner*, 588 So. 2d 428, 433 (Miss. 1991)(holding that emancipation of the child does not

pretermit recovery of vested but unpaid child support and that either the child or the former custodial parent may bring an action against the defaulting parent). *See also **Premeaux v. Smith***, 569 So. 2d 681, 685 (Miss. 1990) (this opinion is without prejudice to the child's right to pursue his rights directly).

2. Neither Amber nor Bruce challenged at trial or assigned as error on appeal the chancellor's order that Amber receive the entire award. In light of their failure to do so, this Court is under no obligation to consider the issue. *See **R.C. Petroleum, Inc. v. Hernandez***, 555 So. 2d 1017, 1023 (Miss. 1990). We have no independent duty to review the question of whether it was proper for the chancellor to order the entire sum to Amber. While the better course of action would be for the chancellor to have considered, sua sponte, any rights of Amber's brother to a portion of the award, under the facts of this case this Court does not find manifest error or abuse of discretion.