KING, Justice,
dissenting:
¶ 19. The majority concludes that neither the common law nor statutory law provides to the courts of this State the authority to require a parent to support an adult child. Maj. Op. ¶ 13-14. Because I *710 believe that the Legislature has provided the chancery courts the authority to order a parent to support an adult disabled child, I respectfully disagree.
¶20. In this case, both parties admit that Rick suffered from serious ailments prior to their divorce.[8] Mari Lynn argues that the medical conditions have escalated, while Lon argues that they have remained the same since before the parties’ divorce. Regardless, it is clear that Rick has suffered from serious medical conditions since his minority. In denying Mari Lynn’s requests for support of Rick into adulthood, the chancery court stated that “it is without statutory authority or jurisdiction to entertain the consideration of continued support for an adult disabled child. It is the Court’s sincere hope that the Mississippi Supreme Court will address this specific issue and give direction to the chancery courts of this state. It is also the Court’s sincere hope that the Mississippi Legislature will address this matter. Until such time, however, this Court is simply without authority or jurisdiction to grant post-majority support for a disabled adult child.” With appreciation for the difficult position of the chancery court, I disagree, and find that statutory authority does exist granting our courts the power to require a parent to support an adult child.[9]
*711 ¶ 21. Mississippi law provides that “[t]he duty of support of a child terminates upon the emancipation of the child.” Miss. Code Ann. § 98-5-23 (Rev.2004); Miss. Code Ann. § 93-11-65(8) (Rev.2004). The majority cites Watkins for the proposition that no statute vests chancery courts with jurisdiction “to impose a duty on parents to support adult children.” Maj. Op. ¶ 14; Watkins v. Watkins, 337 So.2d 723, 724 (Miss.1976).[10] With all due respect to the majority, the statutory scheme regarding child support has undergone significant changes since 1976, when this Court decided Watkins.[11] In 1976, neither Section 93-5-23 nor Section 93-11-65 contained any provisions mandating when the duty of support terminated. Laws 1954, Ch. 228, § 1; Laws 1960, Ch. 268, § 1. In fact, the Legislature did not explicitly provide for when the duty of support terminated until 1996, when it provided that the duty terminates upon the child’s emancipation. Laws 1996, Ch. 345, § 1. Thus, the decision turns on the definition of “emancipation of the child.”
¶ 22. The Legislature provided that a “court may determine that emancipation has occurred pursuant to Section 93-11-65.” Miss. Code Ann. § 93-5-23 (Rev. 2004) (emphasis added). This determination of emancipation is clearly permissive, and not mandatory. See Burt v. Burt, 841 *712 So.2d 108, 111-12 (Miss.2001) (“The statutory requirements for emancipation [under the prior version of Section 93-5-23] are clearly permissive and not mandatory; the court may determine that the child has been emancipated if any of the four factors are satisfied.” (emphasis in original)).[12] Thus, the Legislature clearly gave the courts the option to use Section 93-11-65 as guidance to determine emancipation in a divorce case, but did not mandate a finding of emancipation under any particular circumstances.[13] Rather, the statute explicitly gives the courts the authority to determine when emancipation occurs with regard to child support ordered pursuant to a divorce proceeding.
¶ 23. Section 93-11-65 provides that
[ujnless otherwise provided for in the underlying child support judgment, emancipation shall occur when the child:
(i) Attains the age of twenty-one (21) years, or
(ii) Marries, or
(iii) Joins the military and serves on a full-time basis, or
(iv) Is convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony[.]
Miss.Code Ann. § 93-ll-65(8)(a) (Rev. 2004) (emphasis added). While emancipation under Section 93-11-65, which is not at issue in this case, “shall” occur when one or more of the four factors is met, this section also provides that emancipation occurs unless the court provides otherwise in the underlying child support judgment. This provision clearly gives courts the latitude to make provisions regarding emancipation in their child support judgments other than those situations outlined in the statute.
*713 ¶ 24. Thus, under both Section 93-5-23, at issue here, and Section 93-11-65, the duty of support ends with emancipation of the child. The plain language of both Sections gives the courts latitude to determine under what circumstances emancipation occurs.[14]
¶ 25. This Court has defined emancipation as
the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent’s legal obligation to support it.
Burt, 841 So.2d at 111 (quoting Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss.1991)). Twenty-one is generally considered the age of majority and presumptively the age of emancipation. See Watkins, 337 So.2d at 724. “At that age a person is presumed to possess the physical and mental capabilities to support himself, to establish his own residence, and in general to manage his own affairs.” Koltay v. Koltay, 667 P.2d 1374, 1376 (Colo.1983). However, when a child is under a mental or physical disability which renders the child incapable of self-support,[15] the presumption of emancipation at age twenty-one may be overcome.[16] Streb v. Streb, 774 P.2d 798, 800 (Alaska 1989); Riggs v. Riggs, 353 S.C. 230, 578 S.E.2d 3, 5 (2003). “A different interpretation would be wholly inconsistent with the independence that the word ‘emancipation’ connotes.” Koltay, 667 P.2d at 1376. A child who is so mentally or physically disabled as to render him incapable of self-support, and who is thus dependent on one or both of his parents, clearly is not free from the “care, custody, control, and service” of his parents. Fur *714 thermore, in such a situation, parental control has not been relinquished. Thus, because I believe that the plain language of the statutes grant the courts the latitude to determine when emancipation occurs, and because emancipation does not occur when, upon attaining the age of majority, a child labors under a mental or physical disability rendering him or her incapable of self-support,[17] I respectfully dissent. I would reverse the chancery court and remand the case for a determination of 1) whether Rick labors under a mental and/or physical disability that renders him incapable of self-support, and thus whether Rick was ever “emancipated,” and 2) if the court determines that Rick overcomes the presumption of emancipation at age twenty-one and has never been emancipated, whether support is appropriate in this case. If the chancery court reaches the second question, it would be appropriate for the court to consider to what extent Rick receives or is capable of earning his own income, whether it be through government assistance or any work Rick is able to perform.
DICKINSON, P.J., KITCHENS AND CHANDLER, JJ, JOIN THIS OPINION.

. Presiding Justice Randolph’s majority emphasizes that the underlying child support judgment (the property settlement agreement entered into by the parties) in this case provides for the maintenance and support of the minor child. While I disagree that this case turns on a reading of the underlying child-support judgment, I must point out that the majority misreads the property settlement agreement. The property settlement agreement is a contract. Courts look to the "four corners’’ of a contract in order to ascertain its meaning. Harrison County Commercial Lot, LLC v. H Gordon Myrick, Inc., 107 So.3d 943, 959 (Miss.2013). On its first page, the property settlement agreement specifically defines "minor child” as Rick, who was indeed a minor at the time of the agreement. The agreement specifies elsewhere that certain provisions, such as custody, affect the “minor child” "during his minority.” Such a statement would be superfluous if "minor" modified "child.” Because the property settlement agreement specifically defines the “minor child” as Rick, who was a minor at the time, and not, as the majority asserts, as Rick only while he is a minor, this emphasis on the term the "minor child” clearly misinterprets the agreement and its explicit definition of the "minor child.” Thus, the child support judgment applied to "the support and maintenance” of Rick, making a post-majority child support determination appropriate.

. The majority of states impose a duty of support on parents of adult disabled children, particularly when the child was disabled during his or her minority. Some states impose such a duty via statute, with some of the statutes merely codifying earlier court decisions or common law to impose a duty of support for adult disabled children. See, e.g., Ariz.Rev.Stat. Ann. § 25-320(E); Ark.Code Ann. § 9-12-312(a)(5)(B); Cal. Fam.Code § 3910(a); Colo.Rev.Stat. Ann. § 14-10-115(B)(a)(II); Fla. Stat. Ann. § 743.07(2); Haw.Rev.Stat. Ann. § 580-47(a); 750 Ill. Comp. Stat. Ann. 5/513(a)(l); Ind.Code Ann. § 31-16-6-6(a)(2); Iowa Code Ann. § 252A.3(3); Ky.Rev.Stat. Ann. § 405.020(2); Minn.Stat. Ann. § 518A.26 (Subd. 5); Mo. Ann. Stat. § 452.340(4); Nev.Rev.Stat. Ann. § 125B.110; N.H.Rev.Stat. Ann. § 461-A:14(IV) & (XVI); N.J. Stat. Ann. § 2A:34-23(a); N.D. Cent.Code § 14-09-08.2(6); Ohio Rev.Code Ann. § 3119.86(A)(1); Okla. Stat. Ann. tit. 43 § 112.1A; 23 Pa. Cons.Stat. Ann. § 4321(3); R.I. Gen. Laws § 15-5-16.2; S.C.Code Ann. § 63-3-530(A)(17) (granting court jurisdiction over cases regarding support of adult disabled child, but not creating such a duty); Tenn.Code Ann. § 36 — 5— 101 (k); Tex. Fam.Code Ann. § 154.066(a)(4); Va. Code Ann. § 20-124.2(C); Wyo. Stat. Ann. § 14-2-204(a)(I). In the absence of a statute, many courts impose such a duty. See, e.g., Ex Parte Brewington, 445 So.2d 294 (Ala. 1983) (interpreting "children” in the child support statute to mean "dependent” children, not "minor” children, thus including children whose dependency results "from physical and/or mental disabilities that continue to render them incapable of self-support beyond majority”); Streb v. Streb, 774 P.2d 798 (Alaska 1989) (“the presumption of emancipation *711 may be overcome by evidence that an adult child is incapable of supporting himself or herself by reason of a physical or mental disability”); Nelson v. Nelson, 548 A.2d 109 (D.C.1988); Sininger v. Sininger, 300 Md. 604, 479 A.2d 1354 (1984); Feinberg v. Diamant, 378 Mass. 131, 389 N.E.2d 998 (1979); Maberry v. Maberry, 183 Mont. 219, 598 P.2d 1115 (1979); Cohn v. Cohn, 123 N.M. 85, 934 P.2d 279 (N.M.App.1996); Riggs v. Riggs, 353 S.C. 230, 578 S.E.2d 3 (2003) (interpreting statute granting court jurisdiction over cases of support of an adult disabled child and finding that "[wjhere ... disability prevents the child from becoming emancipated, the presumption of emancipation upon reaching majority is inapplicable”); Dehm v. Dehm, 545 P.2d 525 (Utah 1976) (defining "children” to include incapacitated children and noting the highly equitable nature of divorce proceedings); Casdorph v. Casdorph, 194 W.Va. 490, 460 S.E.2d 736 (1995). See abo M.C. Dransfield, Annotation, Parent’s Obligation to Support Adult Child, 1 A.L.R.2d 910 (1948); Noralyn O. Harlow, Annotation, Post-majority Disability as Reviving Parental Duty to Support Child, 48 A.L.R.4th 919 (1986).

. This statement is arguably dicta. The Court in Watkins ultimately determined that "the contempt proceeding was not an appropriate suit in which to determine whether Roy Watkins was retarded, and whether his father was liable for his support if he was. It is, therefore, inappropriate for the Court to express any opinion on the question of whether a parent has a duty to support an adult retarded child.” Watkins, 337 So.2d at 724-25; see also Taylor v. Taylor, 478 So.2d 310, 312 (Miss.1985) ("[S]ome members of the bench and' bar have relied on [Watkins ] for the proposition that a parent has no legal duty to support an adult retarded child beyond the age of majority. This is a misconstruction. The Watkins case never reached the question, but merely held a contempt proceeding was an inappropriate suit in which to do so.”).

. The majority also cites Watkins for the proposition that the common law does not provide for this Court to recognize a duty to support an adult disabled child. This notion has also been discredited. While it is generally recognized that the English common law did not recognize such a duty, many courts have determined that the common law has evolved and found a duty to support an adult disabled child. See, e.g., Nelson v. Nelson, 548 A.2d 109, 114 (D.C.Ct.App.1988) (“As we believe this opinion demonstrates, Watkins is contrary to the great body of authority recognizing the existence of such a parental duty to support[.]”); Holleyman v. Holleyman, 78 P.3d 921, 936 (Okla.2003) ("Although the early common law did not extend to one’s parental duty of support beyond a child's minority, the great majority of American jurisdictions, in which the statutory law is silent, has recognized an exception where, as here, the child is unable to care for itself upon attaining majority. This view is rested on common-law developments.” (emphasis in original)).

. At the time of the divorce, and the time that Burt was decided, the statute provided that the duty of child support "terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child” reaches the age of twenty-one, marries, discontinues full-time schooling and obtains full-time employment, or voluntarily moves away from home and establishes independent living arrangements and obtains full-time employment. 2000 Miss. Laws Ch. 453 (emphasis added).

. The case at hand was decided under Section 93-5-23 governing divorce cases, which clearly states that a chancellor may, but is not required, to determine emancipation based upon Section 93-11-65. Further, at the time of the divorce, the statute merely stated that the chancellor may determine emancipation under certain circumstances, including the attainment of the age of twenty-one.
Child support judgments are generally entered when children are at a young age. According to the majority, a child support judgment entered for a three-year-old child must provide for emancipation in that child support judgment in order for emancipation to be prevented at age twenty-one. Maj. Op. ¶ 14. Clearly, that is an impossible determination to make in most circumstances. In order to give effect to Section 93-5-23, a chancellor could only make a determination that the presumption of emancipation was overcome if the child was near in age to the age of majority such that the determination was made on the child's condition as an adult or near adulthood. The time at which to make that determination would be in a motion to modify the original child support judgment when the child is of an age to make a proper determination as to whether the presumption of emancipation at the age of majority has been overcome, and, if proper, substitute it with a modified child support judgment.
However, in light of today’s opinion finding that emancipation must occur at age twenty-one unless the chancellor otherwise provides in the child support order, Majority Opinion ¶ 14, I would encourage all chancellors to include in the original child support order in all divorce cases henceforth a provision delaying the determination of emancipation. This will allow chancellors to later consider child support in the event the child is disabled prior to attaining the age of twenty-one.

. This Court's duty under the Constitution is to apply the law as it is written. Falco Lime, Inc. v. Mayor and Aldermen of Vicksburg, 836 So.2d 711, 725 (Miss.2002). To give any effect at all to the express statutory language that a court may determine that emancipation occurred at age twenty-one, one must allow that the court has the power to determine that emancipation does not occur at age twenty-one under certain circumstances. The majority and the special concurrence cite separation-of-power concerns, yet they themselves violate the separation of powers by rewriting the statute to mean that emancipation shall occur at age twenty-one, no matter what a court determines. The plain language of Section 93-5-23 belies such an interpretation.

. This standard is the same as that provided by Section 43-19-33, which provides that a putative father is not relieved of the duty of support in the case of an adult child who "is mentally or physically incapable of self-support.” Miss.Code Ann. § 43-19-33(3) (Rev. 2009). The majority takes note that the Legislature did provide a duty of support to adult disabled children in cases of illegitimate children in which the Mississippi Department of Human Services Child Support Unit is involved. Maj. Op. n. 5. While the parties do not brief this particular issue, thus I decline to go into detail regarding it, I note that the Equal Protection implications of the majority’s decision are troubling. Under the majority, Mississippi will mandate a duty to support illegitimate adult disabled children, but not legitimate ones, or ones whose fathers otherwise recognize and support them. Such a distinction appears to be problematic under the Equal Protection Clause, as I see no rational basis for treating these classes differently. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 441, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (classifications based on legitimacy receive a level of heightened scrutiny); Mathews v. Lucas, 427 U.S. 495, 504, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

.The majority's contention that children are emancipated by operation of law at the age of twenty-one is inconsistent with the fact that the age of twenty-one creates only a presumption of emancipation, and that presumption is subject to being rebutted by the facts of a specific case. The chancellor may consider the facts of this particular case to determine if Rick was ever emancipated, or whether such a presumption has been rebutted.

. The statutes are clear that the duty of support terminates upon emancipation. Thus, I believe that a child who becomes disabled after emancipation, by attaining the age of majority or otherwise, does not have a right to parental support under Sections 93-5-23 and 93-11-65. Once liability is terminated, it cannot be restored. Kruvant v. Kruvant, 100 N.J.Super. 107, 241 A.2d 259, 266 (1968). However, if the disability occurs before emancipation and renders the child unable to be emancipated, such a duty continues so long as the child remains unemancipated.