**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **July 17, 2018**

**NO. A-1-CA-34742**

**CHRISTINA J. GONZALES,**

     Petitioner-Appellee,

v.

**RICHARD S. SHAW,**

     Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Judge**

Monica D. Baca
Albuquerque, NM

for Appellee

Trujillo Dodd, Torres, O'Brien, Sanchez, L.L.C.
Donna S. Trujillo Dodd
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1} Respondent Richard Shaw appeals the district court's order setting child support for his adult disabled son, Blake (Son), and memorandum order and judgment awarding Petitioner Christina Gonzales attorney fees and costs. Respondent raises four arguments on appeal: (1) the evidence was insufficient to find Son is a disabled adult in need of continuing child support; (2) the district court erred in relying on the report and testimony from clinical neuropsychologist, Dr. Jonathan R. Kurtyka, Ph.D., in its determination on the issue of continued child support for Son; (3) the district court erred in its treatment of the proceeds Son receives as a result of his disabilities from Social Security as part of the child support calculation; and (4) the district court erred in its award of attorney fees and costs to Petitioner. We affirm.

**BACKGROUND**

{2} Petitioner filed a motion to establish child support for Son—nineteen years old at the time—pursuant to *Cohn v. Cohn*, 1997-NMCA-011, ¶ 5, 123 N.M. 85, 934 P.2d 279 (establishing the possibility of child support persisting beyond a child's eighteenth birthday in certain circumstances of disability.) After an evidentiary hearing that took place over the course of two days, the district court concluded, under *Cohn*, that Petitioner and Respondent have a continuing obligation to

financially support Son. The district court determined that Respondent's child support obligation to Son is $582 per month.

{3}     In its memorandum order and judgment, the district court explained that "[t]he testimony of Dr. Jonathan Kurtyka was helpful and compelling in terms of the decision to award child support. Both parties had the opportunity to interview Dr. Kurtyka prior to his testimony in Court and, therefore, had access to Dr. Kurtyka's information before the two trial dates that were eventually needed to resolve the issues herein. In addition to Dr. Kurtyka's testimony, Respondent's own witnesses, who were subpoenaed to come to Court, testified that [Son] is disabled." The district court further ordered that Petitioner shall be awarded attorney fees, gross receipts tax, and costs related to Dr. Kurtyka's testimony. Respondent appeals.

**DISCUSSION**

**I.     Sufficiency of the Evidence That Son Is a Disabled Adult Entitled to Continuing Child Support**

{4}     Respondent claims that "[i]t is clear that New Mexico adopts the notion that parents shall continue to support their disabled or incapacitated children. However, the facts of this case do not rise to the level of a[n] incapacitated adult child, despite his defined disabilities." Respondent therefore contends that the evidence was insufficient to determine Son is a disabled adult in need of continuing child support.

2

{5}     "Child support determinations are made at the discretion of the district court and are reviewed for abuse of discretion." *Jury v. Jury*, 2017-NMCA-036, ¶ 26, 392 P.3d 242. "A district court abuses its discretion if it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Id.* (internal quotation marks and citation omitted). To the extent that Respondent argues that there was an insufficient basis to support the district court's findings concerning the extent of Son's disability, "we review the evidence in the light most favorable to support the district court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Gabriele v. Gabriele*, No. A-1-CA-34523, 2018 WL 797270, ___-NMCA-___, ¶ 18,___ P.3d ___ (Jan. 31, 2018) (alteration, internal quotation marks, and citation omitted). However, insofar as Respondent challenges the district court's legal conclusion concerning whether Son qualified as an adult in need of continued child support under *Cohn*, our review is de novo. *See Gabriele*, ___-NMCA-___, ¶ 18.

{6}     We held in *Cohn* that under the common law, "if a child is disabled at the time of reaching majority, . . . the parental duty to provide support continues indefinitely, until the disability is removed." 1997-NMCA-011, ¶¶ 5-6 (internal quotation marks and citation omitted). In *Cohn*, the father appealed the district court's order requiring him to pay child support for his thirty-seven-year-old son, George, who had been

3

"severely mentally and physically handicapped since birth." *Id.* ¶¶ 1-2. At the time the district court entered its order, George had been and continued to be cared for by his mother. *Id.* ¶ 2. The district court found that George had the mind of a three-year-old child and was incompetent, suffered from frequent epileptic seizures, had to be helped in bathing and dressing, and needed constant supervision. *Id.* On appeal and based on the district court's findings concerning George's condition, we concluded that George was "severely disabled" before reaching the age of majority and therefore the district court did not err in ordering the father to pay support for his disabled adult son. *Id.* ¶ 6.

{7} The evidence presented in the hearing of this case overwhelmingly demonstrates that Son was severely disabled before reaching the age of majority as contemplated by *Cohn*.

{8} Son was born with the genetic disorder, Chromosome 14, Trisomy Mosaic, identified aspects of Fragile X syndrome (which presents with growth delays, psychomotor delays, and mental retardation), and a clubbed foot. As a high school student, Son "received academic instruction in a full-time special education classroom." Son's IQ at the time of Dr. Kurtyka's neuropsychological evaluation was 65—in the severely impaired range. Son's performance in all academic core skills were at least three grade levels below the expectation for a child his age, including

4

performing at a first-grade level in math and at a fourth-and fifth-grade level in reading and spelling, respectively. Dr. Kurtyka testified that it was unlikely that Son's skills could be improved with additional education. Son also tested in the mildly to moderately impaired level in learning and memory skills, language functioning, visual, and motor skills. Son's behavioral testing indicated significant difficulty with behavioral, emotional, attentional, and executive functioning. Son was limited in all adaptive functioning areas, which include motor skills, social communication, personal living skills, and community living skills. Dr. Kurtyka testified that based on his testing, he diagnosed Son with Mild Retardation, Attention Deficit/Hyperactivity Disorder, and Combined Type.

{9}    Dr. Kurtyka's report and testimony also indicated that given Son's significant impairment in adaptive behavioral skills, he expected that Son would also have difficulties in independent functioning in the future. He further testified that individuals with Son's level of functioning would likely be unable to live on their own without support, fill out job a application without assistance, rent an apartment on their own, drive a car, or budget their money. When Dr. Kurtyka's report was prepared, he recommended that Petitioner consider obtaining a durable power of attorney for Son or explore the possibility of legal guardianship once Son turned eighteen. Given Son's diagnoses, Dr. Kurtyka did not expect Son's condition to have

changed significantly since his evaluation.

{10} Petitioner testified that shortly after Son's birth, it was clear that he was not normal and that during his infancy and early childhood, she recognized that Son was not meeting his developmental milestones and required multiple surgeries, including to address his clubbed foot, to conduct an ear tube procedure, and to remove a thyroglossal duct cyst. She also testified that Son was diagnosed with Chromosome 14, Trisomy Mosaic, and Fragile X syndrome at age 5. Petitioner testified that Son had been in full-time special education classes since kindergarten and lived with her full-time. Petitioner also testified that Son has difficulty thoroughly brushing his teeth, determining what clothing is appropriate, and managing his overall hygiene. Petitioner also testified that Son is unable to cook or plan meals for himself, has little understanding of the concept of money, how to budget, or how to pay correct amounts for items without assistance, does not have a concept of or ability to tell time, and has impulse control problems stemming from his disabilities.

{11} Respondent called four witnesses on his behalf, all of whom were special education teachers that had experience with Son in the high school environment, and each one testified that Son was disabled. Respondent disagreed with his own witnesses and all the other evidence demonstrating that Son is disabled.

{12} Viewing the evidence in the light most favorable to support the district court's

6

findings, resolving all conflicts and indulging all permissible inferences in favor of the district court decision, we conclude that substantial evidence supports the district court's findings and conclusion that Son was disabled upon reaching majority and is an adult entitled to continuing child support.

**II.     The District Court's Reliance Upon Dr. Kurtyka's Report and Testimony**

{13}     Respondent next asserts that the district court erred in relying upon Dr. Kurtyka's neuropsychological evaluation of Son because "it was aged and not relevant to the child support issue." Respondent argues that the evaluation was conducted to evaluate Son's medical history and cognitive emotional functioning at age sixteen with the purpose of supporting Son's developmental disability waiver application—not for a legal hearing on child support issues. Further, Respondent contends that it was arbitrary and capricious for the district court to allow him one week to determine whether he wanted Dr. Kurtyka to conduct a follow-up evaluation of Son. Petitioner responds that Respondent failed to preserve these arguments for appeal. We agree.

{14}     In order to preserve an issue for review, a party "must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d

791; *see* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *McCauley v. Ray*, 1968-NMSC-194, ¶ 9, 80 N.M. 171, 453 P.2d 192 ("Failure to object to the admission of evidence constitutes a waiver of objection, and in such case the objection cannot be raised for the first time on appeal."). "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Sandoval*, 2009-NMCA-095, ¶ 56.

{15}     Prior to the presentation of evidence at the hearing, Respondent stipulated that Dr. Kurtyka is an expert in neuropsychology and to the admission of Dr. Kurtyka's report. After hearing Dr. Kurtyka's testimony and recognizing that the neuropsychological evaluation of Son that formed the basis of Dr. Kurtyka's testimony was three years old at the time of the hearing, the district court advised the parties that if either wanted an updated evaluation of Son, they could obtain one with the cost being split in half between them, subject to reallocation if appropriate. The court further advised the parties that it believed that the case was a "*Cohn* situation—that [Son] is not capable of living independently." The district court then

8

asked the parties whether they wanted an updated evaluation—Petitioner indicated that she did not. Counsel for Respondent asked for "a week" to decide. The district court granted the request, which was reflected in a minute order filed after the first setting of the hearing. Respondent neither objected to this process nor did he opt to obtain an updated evaluation.

{16}     Under these circumstances, we conclude Respondent failed to preserve his objection to the district court's reliance upon Dr. Kurtyka's report and testimony. *See Peay v. Ortega*, 1984-NMSC-071, ¶ 4, 101 N.M. 564, 686 P.2d 254 (stating that "[c]ourts generally honor stipulations between the parties and uphold such agreements concerning trial of a cause or conduct of litigation if the stipulations are not unreasonable, not against good moral standards or sound public policy, and are within the general sense of the pleadings"); *Quintana v. Vigil*, 1942-NMSC-018, ¶ 24, 46 N.M. 200, 125 P.2d 711 (determining that the defendants waived any objection to the introduction of exhibit where the defendants expressly consented to its introduction), *overruled on other grounds by Evans Fin. Corp. v. Strasser*, 1983-NMSC-053, ¶ 11, 99 N.M. 788, 664 P.2d 986; *Malczewski v. McReynolds Constr. Co.*, 1981-NMCA-046, ¶ 13, 96 N.M. 333, 630 P.2d 285 (determining that expert witness's testimony was admissible where the defendant made no objection to its admission).

### III. The District Court's Treatment of Son's Social Security Disability Funds in Its Child Support Calculation

{17}  Relying generally on *Mask v. Mask*, 1980-NMSC-134, 95 N.M. 229, 620 P.2d 883 and *Romero v. Romero*, 1984-NMCA-049, 101 N.M. 345, 682 P.2d 201, Respondent next argues that the district erred in failing to include Son's social security disability funds in making its child support calculation. Specifically, Respondent contends that under these cases, equitable considerations dictate that Respondent receive a credit against his support obligation for the social security payments Son receives. We disagree.

{18}  In *Mask*, upon the retirement of her father, the child of divorced parents began receiving monthly social security payments deriving from her father's contributions to the social security fund. 1980-NMSC-134, ¶ 2. The father was in default on his child support obligations before and during the child's receipt of social security payments. *Id.* The district court allowed the father an offset against his total arrearages in an amount equal to the social security payments received by the child. *Id.* ¶ 3. Our Supreme Court held that when a child's monthly receipt of social security funds coincides with a parent's default on child support payments, the arrearages may be offset by the social security payments up to the amount, but not exceeding the parent's monthly child support obligation. *Id.* ¶ 6.

{19}     In *Romero*, the father of two children was ordered to pay child support. 1984-NMCA-049, ¶ 1. The mother subsequently filed a motion to modify child support. *Id.* "At the time of the hearing on this motion, the father's income was from social security and workmen's compensation." *Id.* At the hearing, the district court found that the father was in default on his child support payments. *Id.* In so concluding, the district court also ruled that the father was entitled to an offset against his child support arrearages for the lump-sum social security payment received by the children derived from his contributions into social security, but that the offset only applied to the father's obligation for the month in which the lump-sum payment was received by the children. *Id.* ¶ 4. On appeal, we reversed on grounds that "*Mask* court's prohibition of 'carry-back' " offsets of a parent's child support obligations only referred to offsets "in the amount the social security checks exceed the support obligation to cancel arrearages accrued before payment of social security." *Id.* ¶ 6. We therefore concluded that the father was entitled to a child support offset "in the amount of the child support payments owed for the months the lump sum covered." *Id.* ¶¶ 4, 7.

{20}     These cases are not authority for Respondent's assertion that the district court erred as a matter of law in not deducting Son's receipt of social security disability in making the child support calculation. *Mask*, which we extended in *Romero*, as

11

Petitioner points out in her brief, merely "stands for the proposition that a disabled parent may receive a full or partial credit against his child support obligation for sums received by the child in social security benefits." In denying Respondent's request for a credit, the district court ruled that if a child is receiving social security benefits through a parent, then the parent may receive a credit. "But that's not the situation here. That is [Son's] benefit and so it doesn't come from either parent. So I am not going to bring that into the child support calculation." This ruling is contained in the district court's written order.

{21}     "The setting of child support is left to the sound discretion of the trial court as long as that discretion is exercised in accordance with the child support guidelines." *Thompson v. Dehne*, 2009-NMCA-120, ¶ 8, 147 N.M. 283, 220 P.3d 1132 (internal quotation marks and citation omitted). "In New Mexico, there is a strong tradition of protecting a child's best interests in a variety of circumstances. It is well-settled law that when the case involves children, the trial court has broad authority to fashion its rulings in 'best interests of the children.' " *Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (internal quotation marks and citations omitted).

{22}     In the absence of any argument or evidence presented by Respondent that Son is not in need of both child support and his social security disability benefits, argument that the district court deviated from the child support guidelines in its child

support calculation, citation to any other authority in support of his claim for a child support offset based on the social security funds received by Son as a result of Son's personal disability, and no attempt to distinguish or argue for an extension of *Mask* and *Romero*, Respondent presents no basis for this Court to find that the district court abused its discretion in its child support calculation or ruled in a manner not in Son's best interest.

**IV.    Attorney Fees and Dr. Kurtyka's Fee**

{23}    Respondent's final argument is that the district court erred in awarding Petitioner attorney fees and costs associated with Dr. Kurtyka's testimony.

{24}    NMSA 1978, Section 40-4-7(A) (1997) authorizes the district court to award attorney fees and costs related to the preparation and presentation of a domestic relations case, providing that:

> In any proceeding for the dissolution of marriage, division of property, disposition of children or spousal support, the court may make and enforce by attachment or otherwise an order to restrain the use or disposition of the property of either party or for the control of the children or to provide for the support of either party during the pendency of the proceeding, as in its discretion may seem just and proper. The court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case.

*See Monsanto v. Monsanto*, 1995-NMCA-048, ¶¶ 7-8, 119 N.M. 678, 894 P.2d 1034. "In awarding fees, the court shall consider relevant factors presented by the parties,

including but not limited to: A. disparity of the parties' resources, including assets and incomes; B. prior settlement offers; C. the total amount of fees and costs expended by each party, the amount paid from community property funds, any balances due and any interim advance of funds ordered by the court; and D. success on the merits." Rule 1-127 NMRA.

{25}    The determination of whether to award fees and costs in a domestic relations case "is within the discretion of the trial court and will be reviewed only to determine whether there has been an abuse of discretion." *Monsanto*, 1995-NMCA-048, ¶ 9. "[T]he trial court's discretion must be exercised with the purpose of insuring each party efficient case preparation and presentation." *Id.*

{26}    Petitioner responds that the district court did not abuse its discretion in its award of attorney fees and costs with the following: (1) "[Petitioner] was the prevailing party in this case and unnecessarily incurred the cost of calling Dr. Kurtyka to testify because [Respondent] did not contact Dr. Kurtyka to find out what his testimony would be" prior to the hearing; (2) "[e]ven after Dr. Kurtyka's testimony and after encouragement from the court to settle the case" after the January 8, 2014 setting of the child support hearing, "[Respondent] persisted and caused [Petitioner] to incur additional and unnecessary attorney fees on March 24, 2015"; and (3) "[Respondent] ignored Dr. Kurtyka's report and findings and refused to accept the

14

fact that not only is [Son] a disabled adult, but that [Respondent] has an obligation to financially support him." Under these circumstances, we conclude that the district court's decision to award Petitioner attorney fees and costs was a proper exercise of its discretion in accordance with Rule 1-127, the purpose of insuring each party efficient case preparation and presentation, and therefore not an abuse of discretion.

**CONCLUSION**

{27}    The orders of the district court are affirmed.

{28}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**EMIL J. KIEHNE, Judge**